CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
10/13/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

**AMY DWYER,** *on behalf of herself*
*and all others similarly situated*,

      **Plaintiff,**

v.    CIVIL ACTION NO. 6:21cv00052

**EQUIFAX INFORMATION SERVICES, LLC,**

      **Defendant.**

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Amy Dwyer ("Plaintiff" or "Ms. Dwyer"), on behalf of herself and all others similarly situated, by Counsel and as for her Complaint against the Defendant, she alleges as follows:

### PRELIMINARY STATEMENT

1. This is a class action for statutory, actual and punitive damages, costs, and attorneys' fees brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x, ("FCRA").

2. Accuracy of information and transparency are core goals of the FCRA since Congress enacted it in 1970. Key to Congress's aspirations is the ability of consumers to dispute inaccurate information and have those inaccuracies corrected. The FCRA makes this right absolute, demanding that consumer reporting agencies ("CRAs") like Defendant investigate a consumer's claim that "any item" of information is incomplete or incorrect. 15 U.S.C. § 1681i(a).

3. Importantly, nothing in the FCRA allows a CRA to delay or interrupt its investigation of a dispute once received. *Id.* Indeed, the Act provides for the opposite—requiring CRAs to, for example, forward the dispute to anyone who furnished to the CRA information

relative to the dispute within five business days of receiving the dispute. 15 U.S.C. § 1681i(a)(2)(A).

4. Here, Equifax ran afoul of the FCRA's investigation requirements by demanding that Plaintiff provide multiple, needless forms of identification before it would even begin to investigate her disputes of inaccurate information.

5. Nothing in the FCRA permits or justifies Equifax's creation of roadblocks to the processing of disputes, yet Equifax repeatedly and unjustifiably requires consumers to provide additional evidence of their identity before it will begin an investigation.

6. Plaintiff brings nationwide class claims against Equifax for its failure to investigate her disputes and, instead, requiring that she provide document after document confirming her identity to Equifax's satisfaction. As alleged herein, Equifax will sell a report about Plaintiff to someone who provides substantially less information than Plaintiff did with her disputes.

## JURISDICTION

7. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §1681p.

8. Venue is appropriate here as the Plaintiff resides here, where her injury occurred.

## PARTIES

9. The Plaintiff is a natural person residing in Virginia, and at all times relevant to this Complaint, was a "consumer" as defined by the FCRA.

10. Defendant Equifax Information Services, LLC ("Equifax") is a foreign corporation authorized to do business in Virginia through its registered agent located in Richmond, Virginia.

11. At all times relevant to this Complaint, it was a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f).

## STATEMENT OF FACTS

12. Prior to November, 2020, Plaintiff was leasing a vehicle through Hyundai Motor Finance.

13. In November, 2020, Plaintiff learned that the account with Hyundai Motor Finance was reporting on her credit file with Equifax as 180 days past due.

14. Also in November, 2020, Plaintiff mailed a written dispute to the Defendant regarding the inaccurate reporting. In the letter, Plaintiff provided her full name, address, telephone number, date of birth, and the last four digits of her Social Security Number.

15. Defendant mailed a letter to Plaintiff refusing to investigate her dispute, claiming that she did not provide sufficient identification information. A copy of this letter is attached to this Complaint as Exhibit A.

16. Plaintiff mailed a second written dispute letter to Defendant and provided her full name, address, date of birth and full Social Security Number.  In addition, Plaintiff sent a separate letter to Equifax complying with its previous request, providing Defendant with a copy of her driver's license and a copy of her Social Security card.

17. Upon receipt of Plaintiff's second dispute letter and copies of Plaintiff's identifying documents, Defendant mailed yet another standard form letter as the previous one to Plaintiff, refusing to investigate Plaintiff's dispute with the information Equifax possessed.

18. Equifax has been sued repeatedly for refusing to investigate disputes by consumers, falsely claiming that the consumer did not provide sufficient identification information.

19. Equifax does not make money by processing disputes from consumers – in fact, this is purely an expense for Equifax. As a result, Equifax now processes consumer disputes using an outsource vendor in India for a small fraction of the amount that Equifax previously spent on

disputes when they were processed in the United States. It is in Equifax's interest to reject disputes for any possible reason, as doing so saves money.

20. For example, Equifax informed the Plaintiff that it would not process her dispute unless she provided significant information and documentation, including:

   a) Complete name;
   b) Current and former addresses;
   c) Social security number;
   d) Date of birth;
   e) Pay stub with complete U.S. Social Security number;
   f) W-2 form with complete U.S. Social Security number;
   g) Valid Social Security card.

21. In addition, Equifax also informed the Plaintiff that it would require a copy of one of the following documents before it would process her disputes:

   a) Driver's license
   b) Rental/lease agreement or house deed
   c) Pay stub with address
   d) Utility bill

22. Notwithstanding these onerous requirements placed on consumers – for which no justification is found in the FCRA – the Defendant <u>sells</u> credit reports to its banking industry customers if those customers provide as little as a consumer's first name, last name, and any previous address.

23. Equifax sells credit reports to its banking industry customers and debt collectors even when the customer does not provide a Social Security Number for the subject of the requested report.

24. Equifax does not require that these customers provide a copy of a government issued identification card for the subject of the requested report.

25. Furthermore, Equifax does not require that these customers provide a copy of a utility bill for the subject of the requested report.

4

26. Discovery will show these hurdles created by Equifax are designed to reduce the number of disputes that its employees (and now foreign agents in India) must process.

27. Equifax's onerous requests for additional information before it will even *begin* investigating a dispute is different than requiring assurances of the consumer's identity before it turns over the completed dispute *results* to the consumer.

28. In other words, it might mean something to make sure Equifax is giving the right consumer the results of a dispute, but there is no reason to demand multiple, repetitive proofs of identity before Equifax will begin an investigation of a dispute.

29. Equifax makes money by selling credit reports.

30. However, Equifax does not make money by processing disputes for consumers complaining about inaccurate information in their Equifax credit files.

31. Therefore, according to Equifax's unjustified and onerous requirements, a consumer who lives in a rural area and does not have access to a photocopier to make a copy of a government issued identification card and/or a utility statement could not have his or her dispute processed at all.

32. Similarly, a consumer who does not possess government issued identification or does not have a utility bill, bank statement, or insurance statement could not have his or her dispute processed.

33. Further, this process causes actual economic harm to consumers such as the Plaintiff and similarly situated consumers are required to spend addition money on copies and postage, and economic resources such as their time, to obtain the rights and reinvestigation the law otherwise mandates.

34. The Plaintiff also suffered actual harm from the publication of inaccurate credit information to a third party that should have been removed and corrected, but for the FCRA violations alleged herein.

## CLASS ACTION ALLEGATIONS

35. **The FCRA Class**. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action individually and on behalf of a class initially defined as follows (the "Class"):

> All natural persons residing in the United States who were the subject of a consumer report prepared by Defendant within two years prior to the filing of this lawsuit for whom Defendant refused to conduct a reinvestigation of a dispute until and unless the consumer provided photocopies of two forms of identification with her/his dispute, and which Equifax's records show thereafter mailed by a second or subsequent dispute letter.

36. **Numerosity.** The Class members are so numerous that joinder of all is impractical. Class members are geographically disbursed across the United States, further hampering joinder. Plaintiff's counsel is in possession of a number of letters received by consumers that are substantially similar to those that the Defendant mailed to the Plaintiff. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

37. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things: (a) whether Defendant had a right to request consumers' full social security numbers or other identifying information before processing their disputes; (b) whether Defendant actually required a social security number or more identifying information in order to locate the consumers' files; (c) whether Defendant failed to conduct a

reinvestigation of consumers' disputes; (d) whether Defendant failed to provide notice of consumers' disputes to the furnishers of the disputed information; and (e) whether the Defendant acted knowingly and intentionally or with conscious disregard of the rights of the consumers.

38. **Typicality.** Plaintiff's claims are typical of the claims of each Class member and all are based on the same facts and legal theories. Discovery will show Defendant sent the same or substantially the same standardized letters to consumers across all states located within the United States during the full class period. For purposes of class certification only, Plaintiff seeks statutory and punitive damages. Plaintiff would seek individual or actual damages only if class certification is denied. In addition, Plaintiff is entitled to the relief under the same causes of action as the other members of the Class.

39. **Adequacy.** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in handling actions involving unlawful practices against consumers and class actions. Neither Plaintiff nor her Counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

40. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

    a. As alleged above, the questions of law or fact common to the members of the classes predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelm the more modest individual damages issues. The statutory and punitive damages sought by each member are such that the individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. Further, those individual issues that do exist can be effectively

streamlined and resolved in a manner that minimizes the individual complexities and differences in proof in the case.

        b.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims generally are ideal for class treatment as they involved may, if not most, consumers who are otherwise disempowered and unable to afford and bring such claims individually. Further, most consumers for whom Defendant refused to process disputes in violation of the requirements of the FCRA are likely unaware of their rights under the law or of whom they could find to represent them in federal litigation. Individual litigation of the uniform issues in this case would be a waste of judicial resources. The issues at the core of this case are class wide and should be resolved at one time. One win for one consumer would set the law for every similarly situated consumer.

## CLAIMS FOR RELIEF

### COUNT ONE: Violation of 15 U.S.C. § 1681i(a)(1)
### CLASS CLAIM

41.    Plaintiff restates each of the allegations in the proceeding paragraphs as if fully set forth at length herein.

42.    Defendant violated 15 U.S.C. § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to subsequently update the information in the file.

43.    As a result of this conduct, the Plaintiff suffered a delay in the processing of her dispute.

44.    Plaintiff suffered actual damages in the form of credit injury, emotional distress and time lost as a result of Defendant's refusal to investigate her disputes, which she is entitled to recover pursuant to 15 U.S.C. §§ 1681n and 1681o.

45. Plaintiff and each class member suffered actual economic harm in the form of additional postage, loss of time spent processing subsequent disputes and costs of copies.

46. Defendant's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

47. The Plaintiff and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n.

### COUNT TWO:  Violation of 15 U.S.C. § 1681(a)(2)
### CLASS CLAIM

48. Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

49. Defendant violated 15 U.S.C. § 1681i(a)(2) by its conducts which includes, but is not limited to, failing to provide notice of the Plaintiff's disputes to the furnishers of the disputed information within the time so required.

50. As a result of this conduct, the Plaintiff suffered a delay in the processing of her dispute and injury from the lack of prosecution of her and class member rights to commence the dispute by the furnisher of disputed and inaccurate information.

51. Defendant's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

52. The Plaintiff and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n.

## COUNT THREE:  Violation of 15 U.S.C. § 1681i(a)(4)
### CLASS CLAIM

53. Plaintiff restates each of the allegations in the preceding paragraphs as if fully set forth at length herein.

54. Defendant violated 15 U.S.C. § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Plaintiff's communications.

55. As a result of this conduct, the Plaintiff suffered a delay in the processing of her dispute and other actual injury.

56. Defendant's conduct, actions, and inactions were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

57. The Plaintiff and the putative class members are therefore entitled to recover statutory damages, punitive damages, costs, and their attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n.

WHEREFORE, Plaintiff, on behalf of herself and the putative class members, moves for class certification and for statutory, and punitive damages against the Defendant; for their attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

AMY DWYER, *on behalf of herself and all others similarly situated*

By:   */s/ Leonard A. Bennett*
Counsel

Leonard A. Bennett (VSB #37523)
Craig Marchiando (VSB #89736)
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
Email: lenbennett@clalegal.com
       craig@clalegal.com